UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS LEROY FULLER,

        Petitioner,

v.                                                              Case Number 06-14974
                                                              Honorable Thomas L. Ludington
JERI-ANN SHERRY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On January 22, 2004, a jury convicted Petitioner Thomas Leroy Fuller of resisting and obstructing a police officer, criminal sexual conduct in the fourth degree, and possession of marijuana. He was sentenced as a habitual offender to one year in prison for the marijuana conviction and to concurrent terms of five and a half to fifteen years in prison for each of the other convictions, and is currently confined at Ojibway Correctional Facility in Marenisco, Michigan.

On November 6, 2006, Petitioner filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the trial court violated his Sixth Amendment right to counsel by granting his request for substitution of counsel on the day of trial, but denying his request to adjourn the trial.

Respondent Jeri-Ann Sherry argues that Petitioner's initial counsel and his trial counsel effectively discovered, organized, and presented Petitioner's case. Respondent further argues that granting Petitioner's request for substitute counsel, but denying his request for an adjournment, does not, considering the record in its totality, justify an inference of prejudice to Petitioner's case. The record supports Respondent's response to Petitioner's application and, accordingly, the petition will

be **DENIED**.

I

A

On September 3, 2003, Petitioner touched a store clerk's breast and then resisted and obstructed his arrest when two police officers pursued him. During the pursuit, Petitioner also discarded some marijuana. On September 12, 2003, a preliminary examination was conducted, at which the arresting officers, deputy sheriffs Chris Rogner and Josh Herman, and the victim, Jill Brady, testified. Counsel for petitioner, Jill Schmidt, was present and examined each witness. Deputies Rogner and Herman provided detailed testimony regarding the pursuit and arrest of Petitioner and the investigation of the sexual assault of the store clerk. With respect to Deputies Rogner and Herman, Schmidt inquired into details of Petitioner's physical resistance and the circumstances surrounding Petitioner's knowledge that each was a member of law enforcement. Brady testified that Petitioner visited the store on multiple occasions on the day of the assault. She indicated that she called 911 after Petitioner made some inappropriate sexual comments, but before he assaulted her. Schmidt questioned Brady about the store's surveillance cameras and what Brady told Deputy Rogner.

On September 22, 2003, Petitioner was arraigned in the Tuscola Circuit Court on four counts of resisting and obstructing a police officer, one count of criminal sexual conduct in the fourth degree, and one count of possessing marijuana. Petitioner pled not guilty to each count and was bound over for trial. Petitioner was released on bond, which was revoked on October 17, 2003.

On November 19, 2003, Schmidt made several discovery requests on Petitioner's behalf. On January 2, 2004, based on the testimony presented at the preliminary examination, Petitioner

moved to dismiss the information. At a hearing conducted on January 12, 2003, Petitioner argued that law enforcement did not have reason to pursue him because the store clerk did not allege that Petitioner committed a crime when she called 911. As a result, Petitioner did not believe that law enforcement had a lawful reason to detain him and any resisting conduct was justified. The prosecution emphasized, notwithstanding the substance of the 911 call, that an arrest warrant was outstanding for Petitioner, a fact which Deputy Rogner confirmed before arresting Petitioner. The trial court denied the motion to dismiss.

On the first day of trial, Schmidt informed the trial court that there was a breakdown in communication between Petitioner and herself. The trial court then asked Petitioner whether he understood that his case was scheduled for trial that day. Petitioner stated that he understood, but that he wished to have a different attorney because he had talked with Ms. Schmidt for only a few minutes before trial. The court explained that it intended to select a jury that day. The trial court permitted Ms. Schmidt to withdraw as counsel and appointed Amy Gierhart to represent Petitioner. The court allowed Petitioner to consult with Ms. Gierhart, but the record reflects that jury selection commenced an hour and twenty-eight minutes later.

After a jury was selected and excused for the lunch break, Ms. Gierhart requested an adjournment because Petitioner was requesting additional information. Ms. Gierhart explained as follows: "As your honor is aware, I was just appointed today to represent [Petitioner]. So, there's items that he had made requests for previously, and for those reasons he's requesting a postponement or adjournment, or a continuation of the trial in this matter." Ms. Gierhart then outlined the information Petitioner sought as follows: any criminal histories of witnesses, information on the complaining officer's prior conduct, and videotapes of what occurred at the store,

in the police car, and at the jail. Petitioner also requested a private investigator and an opportunity to locate two witnesses: a Michigan State Police detective and the owner of the store where the alleged criminal sexual conduct took place. Ms. Gierhart stated that she did not know why Petitioner wanted a private investigator, because she did not have an opportunity to discuss the matter with him. Ms. Gierhart also admitted that she did not know why Petitioner was asking for the store owner and the state detective. She also moved to exclude evidence that Petitioner was on parole at the time of the charged offenses and that he had an active warrant for his arrest. Despite outlining Petitioner's additional discovery requests, Ms. Gierhart did not explain why proceeding would be prejudicial.

The trial court granted Ms. Gierhart's motion *in limine*, but denied the other defense motions. The court stated that the trial date was set almost three months earlier and that Ms. Gierhart had come to court prepared for jury selection in another case. The trial court was satisfied that Ms. Gierhart could provide Petitioner competent representation. The court concluded that the discovery requests did not appear to be logical, relevant, material, or admissible, and that the state detective had no apparent involvement in the case. With respect to the videotapes, the court instructed the prosecutor to provide them to the Petitioner and Ms. Gierhart. The trial court then stated that it was ready to try the case, the jury was summoned, and the trial resumed.

The complaining witness testified that she knew Petitioner by name and that he frequently came into the store where she worked in Watrousville. On September 3, 2003, Petitioner came into the store three to five times. On one of those occasions, he made sexual innuendos toward her. He left the store briefly, but returned and told her to come over to the counter. She thought that Petitioner was going to ask for cigarettes, but he lifted his arm and brushed it against her breast. She

was sure that the touching was not accidental because Petitioner smiled after it happened. She called the police, and an officer responded a minute or two after Petitioner left the store and walked away.

Deputy Rogner testified that he responded to a call from the family market in Watrousville. He briefly talked to the clerk, who informed him that Petitioner had touched her breast. He located Petitioner a short distance away and pursued him in his marked patrol car. Petitioner looked in his direction, but kept walking, and placed some items on the hood of a parked truck. Officer Rogner had a valid warrant for Petitioner's arrest and fired a round of shots into the grass. Petitioner did not stop even after Deputy Herman arrived and pulled in front of Petitioner. Petitioner swore at the two deputy sheriffs and refused to get on the ground as directed. Deputy Rogner finally sprayed Petitioner with pepper gas, and the two officers then handcuffed Petitioner. They placed him in Deputy Herman's car and returned to the truck where Petitioner had discarded some things. The items consisted of a shirt, beer bottles, and marijuana. At the police station, several officers escorted Petitioner into the building. Petitioner continued to resist the officers.

Deputy Herman testified that he was dispatched to the family market because Petitioner was harassing the store clerk and was wanted for a parole violation. He saw Deputy Rogner chasing Petitioner. Deputy Herman got out of his patrol car, drew his pistol, and repeatedly ordered Petitioner to stop. Petitioner eventually stopped, but he refused to get on the ground as instructed. Petitioner dropped to the ground only after Deputy Rogner sprayed him with a chemical. Petitioner did not resist very much on the way to the patrol car, but he resisted a search at the jail and had to be restrained. The items on the hood of the pickup truck were a shirt, keys to the truck, and a small piece of folded paper with suspected marijuana inside it.

During a recess in the trial, Ms. Gierhart moved for a mistrial on the ground that Deputy

Herman had testified about a parole warrant for Petitioner's arrest. The trial court took the request for mistrial under advisement, but instructed the jury to disregard the testimony that Petitioner was sought for a parole violation.

Herbert Terbush testified that he was picking peaches at his neighbor's house when he saw Deputy Rogner chasing Petitioner. Deputy Rogner kept telling Petitioner to get down, but Petitioner would not do what the officers asked him to do.

Deanna Marshall testified that she was a records clerk at the Tuscola County Sheriff's Department. She transported one sealed package from the security garage at the jail to the lab. Forensic scientist Sheila Smith testified that she received an exhibit from Deputy Marshall and determined that the plant material was marijuana.

Petitioner was the sole defense witness. He admitted that he was a frequent customer at the family market in Watrousville. He claimed that, on September 3, 2003, he went in the store to buy cigarettes, which were kept above the counter. As the clerk walked toward him, she brushed up against him and he bumped her slightly. Petitioner testified that he collided with the clerk, but that he did not intend to have sexual contact with the clerk. He further testified that he departed the store because he was on parole and did not want any problems. About fifteen minutes later, he came into contact with Deputy Rogner. He heard a roar and began running. After he heard a gunshot, he ran even faster toward the highway. He did not realize that it was Deputy Rogner chasing him until another officer pulled out a gun and ordered him to put his hands in the air. Although Deputy Rogner told him to get on the ground, he refused because both officers were holding a gun on him and he did not want to get shot. He was sprayed by one officer and put in a patrol car. He did not resist Deputy Herman as he got out of the car at the jail. The officers jumped him as he walked

toward the jail, and he thought that a city police officer punched him in the back of the head at the jail. Petitioner admitted that the marijuana in evidence belonged to him.

Deputy Rogner testified on rebuttal that he had been dressed in his uniform on the day in question and that Petitioner had looked directly at him during the chase. The only time physical force was used on Petitioner was when he resisted.

Ms. Gierhart emphasized Petitioner's testimony, that his touching of the clerk's breast was accidental, in her closing argument. She asked the jurors, in closing, to acquit Petitioner on all the charges except the marijuana charge, because Petitioner had admitted that the marijuana in question was his marijuana.

On January 22, 2004, the jury acquitted Petitioner of two counts of resisting and obstructing a police officer, but found him guilty of the other two counts of resisting and obstructing a police officer, Mich. Comp. Laws § 750.81d(1). The jury also found Petitioner guilty, as charged, of criminal sexual conduct in the fourth degree, Mich. Comp. Laws § 750.520e, and possession of marijuana, Mich. Comp. Laws § 333.7403(2)(d).

B

Petitioner moved for a new trial on the grounds that he was denied discovery and witnesses and that the trial court appointed a new attorney for him shortly before trial. At a hearing on his motion for new trial, Petitioner represented himself because Ms. Gierhart withdrew as counsel after trial. Petitioner argued at the hearing that Ms. Gierhart did not have sufficient time to prepare for trial and that she had gone to court "blindfolded." Petitioner also contended that he had an inadequate amount of time to talk to Ms. Gierhart before he went into the courtroom, as they had talked primarily about a plea offer during their brief discussion. Petitioner asserted that Ms. Gierhart

did not have an opportunity to read any transcripts or police reports and that she knew nothing about his case.

The trial court was not persuaded by Petitioner's arguments, reasoning that Ms. Gierhart had a sufficient opportunity to read the police report and preliminary examination transcript to be prepared for trial. The Court also emphasized that the case was "pretty straight forward" with a limited number of witnesses. According to the court, Petitioner's prior attorney had conducted discovery, and that the material witnesses' testimony was known from the preliminary examination. The trial court denied Petitioner's motion for a new trial after determining that his legal representation was adequate and that there were no factual allegations supporting his claims.

The trial court subsequently sentenced Petitioner as a habitual offender to one year in prison for the marijuana conviction and to concurrent terms of five and a half to fifteen years in prison for the criminal sexual conduct and each count of resisting and obstructing a police officer. During sentencing, the Court observed that Petitioner had approximately fifteen prior convictions. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence, *see People v. Fuller*, No. 255961, 2005 WL 3076931 (Mich. Ct. App. Nov. 17, 2005) (per curiam), and on October 4, 2006, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *People v. Fuller*, 721 N.W.2d 600 (Mich. 2006).

C

On November 6, 2006, Petitioner filed his habeas corpus petition, which alleges that he was deprived of his Sixth Amendment rights to effective assistance of counsel and a fair trial by the trial court's refusal to grant him a continuance. Dkt. # 1. An attorney with the State Appellate Defender Office subsequently entered an appearance in Petitioner's behalf and filed a supplemental

memorandum of law on Petitioner's Sixth Amendment claim. Dkt. # 25. Respondent filed a responsive pleading, which contends that the presumption-of-prejudice standard found in *United States v. Cronic*, 466 U.S. 648 (1984), does not apply here. Dkt. # 7. According to Respondent, Petitioner has failed to demonstrate that his attorney's performance was both inadequate and prejudicial, as required by *Strickland v. Washington*, 466 U.S. 668 (1984).

II

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

III

Petitioner's sole claim is that he was deprived of his Sixth Amendment right to counsel and

to a fair trial when the trial court denied his request for a continuance to enable his newly appointed attorney to prepare for trial. The Michigan Court of Appeals adjudicated this claim on the merits and concluded on the basis of *Strickland* that Petitioner had not overcome the presumption that his attorney was effective and not prejudiced by the limited amount of time she had to prepare for trial.

A

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Because "an unaided layman may have little skill in arguing the law or in coping with an intricate procedural system, [the Supreme Court has] held that the Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime." *Wheat v. United States*, 486 U.S. 153, 158 (1988) (citations omitted); *see also Martinez v. Court of Appeal of Ca.*, *Fourth Appellate Dist.*, 528 U.S. 152, 158 (2000) ("[A]n indigent defendant in a criminal trial has a constitutional right to the assistance of appointed counsel."). Although the Constitution does not

> specif[y] any period which must intervene between the required appointment of counsel and trial . . . the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment.

*Avery v. Alabama*, 308 U.S. 444, 446 (1940) (footnote omitted).

"[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner ordinarily must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "If a claim is

-10-

governed by *Strickland*, a defendant must typically demonstrate that specific errors made by trial counsel affected the ability of the defendant to receive a fair trial." *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir. 2003).

"Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983); *accord Cronic*, 466 U.S. at 661 (explaining that every refusal to postpone a criminal trial will not give rise to a presumption of ineffective assistance); *Chambers v. Maroney*, 399 U.S. 42, 54 (1970) (declining "to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel"). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Slappy*, 461 U.S. at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

In some cases, however, it is unnecessary to inquire into counsel's actual performance or to require the defendant to show the effect counsel's performance had on the trial, because the circumstances were "'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658-59 (1984)). The defendant is presumed to have been prejudiced when (1) there is a "complete denial of counsel," (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) the circumstances are such that even a competent attorney would be unlikely to provide effective assistance. *Cronic*, 466 U.S. at 659-60.

The first two situations are inapplicable to the present matter. Petitioner was not denied counsel. He was represented by counsel during the pretrial proceedings and at trial. Nor was

-11-

Petitioner deprived of an attorney who failed to subject the prosecution's case to meaningful adversarial testing. Ms. Gierhart cross-examined the prosecution's witnesses, made objections, and examined Petitioner as a witness. Her efforts led to Petitioner's acquittal on two of the charges.

Thus, the remaining question is whether "the likelihood that any lawyer, even a fully competent one, could provide effective assistance [is] so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-60. Five factors are relevant to a court's determination on a lawyer's effectiveness in a particular case: (1) the time afforded to newly appointed counsel for trial preparation; (2) counsel's experience; (3) the gravity of the charge; (4) the complexity of the case; and (5) the accessibility of witnesses. *Id*. at 663-66.

Petitioner's trial attorney, Ms. Gierhart, was given approximately an hour and a half to prepare for trial. Although this was a small amount of time, Ms. Gierhart was an experienced attorney, and the trial court was satisfied that Ms. Gierhart was competent and could provide adequate representation for Petitioner. The trial court stated at the post-conviction hearing that Ms. Gierhart had ample time to speak with Petitioner and that she could have read the police reports and preliminary-examination transcript in five minutes each.

While Petitioner asserts that he did not have sufficient time to consult with Ms. Gierhart, he did have the benefit of advice from predecessor counsel, Ms. Schmidt, who invested considerable effort in the case. Ms. Schmidt represented Petitioner at the preliminary examination, obtained discovery, challenged the legality of Petitioner's arrest, and managed to have one of the counts reduced to a misdemeanor. The preliminary examination provided an opportunity for counsel, with Defendant present, to probe the testimony of three primary witnesses – the victim and the deputies.

For the balance of trial preparation, Petitioner and counsel had knowledge of their likely testimony.

In addition, the record demonstrates that the case was not legally or factually complex. There were only six prosecution witnesses and one defense witness (Petitioner). Identity was not a disputed issue. The finder of fact had the primary task of evaluating the credibility of the Petitioner against the prosecution's witnesses. The only exhibits presented at trial related to the uncontested marijuana charge. The evidentiary issues were routine, addressing whether evidence was prejudicial, relevant or appropriately classified as hearsay. For example, Petitioner's counsel successfully moved to exclude introduction of Petitioner's criminal history and moved for a mistrial when Deputy Herman's testified that Petitioner was a parole violator. The only dispute about the jury instructions was whether an instruction on flight was appropriate for some or all the charges.

Next, the record demonstrates that all witnesses who observed Petitioner's conduct at the time of the offenses were available and ready to testify at trial. Moreover, Ms. Gierhart could have left a specific record if she believed relevant witnesses had not been called and she did not. Petitioner has not alleged how he would have benefitted from contacting and producing the two witnesses that he requested before trial. The store owner was not present during the incident in the family market, and the state detective had no apparent involvement in the case.

The circumstances of Petitioner's case were such that prejudice to him could have and were avoided by competent counsel. Therefore, Petitioner is not presumed to have been prejudiced by denying his request for an adjournment.

B

The Court's conclusion that *Cronic*'s presumption of prejudice does not apply here is supported by clearly established federal law as determined by the Supreme Court. In *Cronic*, an

inexperienced attorney was appointed to represent the defendant in a mail fraud case. 466 U.S. at 649. Although the attorney was given twenty-five days to prepare for trial, compared to an hour and a half in this case, he was a young attorney who practiced real estate law. Indeed, Cronic's case was the appointed attorney's first jury trial. *Id.* at 665. The Supreme Court nevertheless held that the case was not one in which the circumstances made it unlikely that the defendant received effective assistance. *Id.* at 666.

In *Avery v. Alabama*, the Supreme Court upheld the denial of a continuance where defense counsel had only three days to prepare for a murder trial. 308 U.S. 444 (1940). The Supreme Court explained that the time permitted for trial preparation had been adequate, absent any indication that trial counsel could have done more if additional time had been granted. *Id.* at 452. Although Petitioner's attorney had less time to prepare for trial than Avery's attorneys had, the charges against Petitioner were significantly less serious and he has not identified anything that Ms. Gierhart could have done if she had been given more time to prepare for trial.

In *Slappy*, the Supreme Court held that the Sixth Amendment right to counsel was not violated by the trial court's denial of a continuance even though substitute defense counsel was appointed only six days before trial. 461 U.S. at 12-15. The charges were rape, oral copulation, robbery, burglary, and false imprisonment. *Id.* at 5 n.1. There, as here, the necessary investigation had been accomplished before trial. *Id.* at 5.

Although in *Powell v. Alabama*, 287 U.S. 45, 59 (1932), the Supreme Court held that it was unlikely counsel could perform effectively where an attorney was appointed on the day of trial, the defendants were not represented by any attorney until the morning of trial. The Supreme Court determined that circumstances were such that the attorney was "preclude[d] from giving effective

aid." *Id.* at 71. Petitioner's case is distinguishable in that he not deprived of the assistance of counsel during the critical pretrial stage. He was represented during the pretrial stage by Ms. Schmidt, who contested the charges and then prepared the case for trial. On the scheduled trial date, Ms. Gierhart assumed responsibility for Petitioner's defense, but there is no demonstration that the timing of her appointment hindered the effectiveness of her presentation of Petitioner's defense. *Cf. Dick v. Scroggy*, 882 F.2d 192, 197 (6th Cir. 1989) (brief interview of defendant on the night before trial and request for continuance on the morning of trial not ineffective assistance of counsel where underlying charges not complex).

Although "courts should make every effort to effect early appointments of counsel in all cases," the Supreme Court is "not disposed to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel . . . ." *Chambers*, 399 U.S. at 54. Because Petitioner's case was not complex and Ms. Gierhart's cross-examination of the police officers was effective, the brief amount of time that Petitioner had to consult with Ms. Gierhart, standing alone, does not justify setting aside his conviction or granting him a new trial.

IV

The circumstances in this case were such that a competent attorney could have and did provide Petitioner effective assistance of counsel. Therefore, it cannot be said that a presumption of prejudice occurred as a result of the trial court's refusal to grant a continuance. And because Petitioner has not alleged that Ms. Gierhart made specific errors that affected his ability to receive a fair trial, the Court's inquiry is at an end. Petitioner was not deprived of his right to effective assistance of counsel, and the state appellate court's decision upholding the trial court's denial of a continuance was not contrary to, or an unreasonable application of, Supreme Court precedent.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability and leave to proceed in forma pauperis on appeal are **GRANTED** because reasonable jurists could disagree with the Court's resolution of Petitioner's constitutional claim, and the issue warrants encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 674 (2004).

                                                 s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge

Dated: August 7, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 7, 2009.

                                       s/Tracy A. Jacobs
                                       TRACY A. JACOBS